LAND, J.
 

 Plaintiff, an attorney at law, was employed by defendant under a written contract of date April 2, 1924, to represent her in the prosecution of a suit for damages, for the death of her husband, against the Great Southern Lumber Company in the United ’States District Court for the Eastern District' of Louisiana.
 

 On March 9, 1927, plaintiff was discharged by defendant and his contract of employment was canceled.
 

 Averring that he had been wrongfully dis-' charged by defendant, plaintiff has brought the present suit to recover certain fees alleged to be due him for professional services rendered to defendant, -in the prosecution of her’ suit for damages in the Federal District Court.
 

 The defense is that plaintiff was discharged for-justifiable causes.
 

 Judgment was rendered in the lower court in favor of deféndant, rejecting the demands of plaintiff at his costs.
 

 From this judgment plaintiff has appealed.
 

 In the contract of employment upon which plaintiff relies, it is stipulated that he shall receive as his fee “25% of any and all amounts collected, paid to or received by the said Mrs. Williams in settlement or compromise of her said claim individually and as tutrix of her said minor child, his said fee being entirely contingent on a collection either in settlement of a judgment or as a compromise and nothing will be due.by her .as atty. fees except she is successful in collecting her claim or any part thereof.”
 

 As recited in plaintiff’s petition, a judgment was obtained for Mrs. Williams in the Federal District Court in the sum of $50,000. As this sum was deemed excessive by the trial judge, a remittitur was entered reducing the judgment to $30,000,. and motion for new trial was overruled.
 

 The case was appealed to the United States Circuit Court of Appeals and, during the pendency of the appeal, the attorney for the Great Southern Lumber Company offered to Higgins and Schaumburger, the other attorneys of Mrs. Williams, a compromise of $25,-000.
 

 Plaintiff wrote three letters to the attorney for the lumber company, warning him that he (plaintiff) was the leading counsel in the case, and that all negotiations should be -had, not,-with the-other counsel of Mrs. Williams, but with him, and that under no cir.cumstances would he accept less than $30,000.
 

 Plaintiff also advised Mrs. Williams, the defendant, not to ■ accept' the compromise of $25,000, as- she was sure to win - her ease in the United States Circuit Court of Appeals, and recover $30,000, the amount of the judgment obtained in the Federal District Court, with interest.
 

 Mrs. Williams yielded to the solicitations of .plaintiff and rejected the offer to compromise her suit for $25,000.
 

 The judgment for $30,000 obtained in the Federal District Court Williams v. Great Southern Lumber Co., 13 F.(2d) 246, was reversed in the United States Circuit Court of Appeals, 17 F.(2d) 468, 471, and the case remanded for a new trial.
 

 About two weeks after this decision had been rendered, Mrs. Williams discharged plaintiff, who in the meantime had refused to join her other attorneys in an application for rehearing in the United States Circuit Court of Appeals, and also in an application for
 
 *6
 
 certiorari to the Supreme Court of the United States, 277 U. S. 19, 48 S. Ct. 417, 72 L. Ed. 761.
 

 • After the discharge of plaintiff, defendant was forced to compromise her suit for $4,500, as the Great Southern Lumber Company had seized her interest in the suit for costs, and plaintiff was without funds to pay same, and was unable to raise any money for that purpose, or for the further prosecution of her suit.
 

 In our opinion, plaintiff was discharged for justifiable causes.
 

 To begin with, plaintiff was leading counsel in this case only in name. The bulk of the work, both in the Federal District Court and in the United States Circuit Court of Appeals, was attended to by I-Iiggins and Schaumburger, the other attorneys for defendant.
 

 Counsel for the lumber company had assured Higgins at the St. Charles Hotel that the company would accept a written offer of compromise of $25,000.
 

 Higgins testified, in this connection, as follows: “I went out of the hotel very happy, and called in Mr. Kenner and Mrs. Williams and the Union officials again, and put it up to them, and Mr. Kenner told them positively not to take it; that a verdict of that court- — ■ the federal court — it was almost impossible for them to reverse, and-the fact that those three judges had already passed on it made it sure that there was no chance to lose the case.” Tr. 149.
 

 The testimony of Higgins is fully corroborated by that of his colleague, Schaumburger.
 

 It appears from the record that Judge Foster and Judge Beattie had passed upon certain exceptions, and that Judge Dawkins had refused a new trial' iñ-the Federal District Court. .
 

 But the record also shows that Judge Dawkins, on application for a new trial, was in doubt whether there had been sufficient evidence to submit to the jury. , The court said: “I have fully read the entire record and while I might, if the case had been' submitted to me, without the intervention, of. a- jury, decide differently, still the evidence .was conflicting as to who fired the. first shot apd also as to- whether if done by the one seeking to execute the warrant they acted in self-defense.”
 

 In reversing the judgment for $30,000 and remanding the case for a new trial,-the -United States Circuit Court of Appeals also said: “We do not think the present record contains direct evidence of a conspiracy between the defendant through its agents and strangers to kill deceased.”
 

 It appears, therefore, that the case was a doubtful one as to sufficiency'- of the proof.
 

 Besides, the testimony of Higgins shows that, in the federal court, the highest amount that had been awarded for damages,that he could find was $15,000, and that plaintiff was made aware of that fact.
 

 Under such circumstances, no , reasonable man would have rejected the compromise in this case; and plaintiff, in our opinion, was guilty of grave fault in opposing and defeating the compromise, which was done over the strenuous protests of his colleagu.es in the case, and resulted in an irretrievable loss to defendant of $25,000, less attorney’s fees.
 

 Plaintiff has not recovered for defendant judgment in any amount, and was justly discharged before the compromise, of $4,500 was effected. Our conclusion, therefore, is that plaintiff is not entitled to recover.
 

 Judgment affirmed.